IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

|  |  |
|---|---|
| **LONNIE LILLARD,** | Case No. 3:23-cv-00026-IM |
| Petitioner, | **OPINION AND ORDER** |
| v. | |
| **ISRAEL JACQUEZ**, Warden, FCI Sheridan, | |
| Respondent. | |

**IMMERGUT, District Judge.**

Petitioner Lonnie Lillard ("Petitioner"), an individual in custody at the Federal

Correctional Institution in Sheridan, Oregon,[1] brings this habeas corpus action pursuant to 28

U.S.C. § 2241 ("Section 2241") alleging that he was denied due process of law in connection

---

[1] Petitioner presently is serving a 196-month term of imprisonment for bank fraud. (Decl. of R. James Hudson (ECF No. 13) ("Hudson Decl.") ¶ 4(a).) Assuming Petitioner earns all remaining available good conduct time, and upon the application of 365 days of earned time credits he already has earned under the First Step Act (the maximum allowed), Petitioner is projected to be released on December 18, 2028. (*Id.* ¶¶ 4(c)-(d).)

PAGE 1 – OPINION AND ORDER

with prison disciplinary proceedings in September 2021. Because Petitioner fails to establish a

due process violation stemming from the disciplinary proceedings at issue, the Petition for Writ

of Habeas Corpus (ECF No. 1) must be denied.

## BACKGROUND

On August 11, 2021, Petitioner received Incident Report 3535109 for "disruptive conduct

most like mail abuse" and "insolence toward a staff member" in violation of Federal Bureau of

Prisons ("BOP") prohibited act codes 296 and 312. (Hudson Decl. ¶ 7, Ex. C at 5.) The issuing

officer, Mr. DeBoer, described the incident giving rise to the charges, as follows:

> At approximately 6:40 a.m. on 8/11/2021 while reviewing inmate to staff requests
> from TRULINCS, I received 4 emails from [Petitioner]. They were sent on
> 8/10/21 at 6:41pm, 6:43pm, 6:48pm and 6:49pm. This is a direct violation of
> policy 4500.12, 14.10, K that states inmate requests to staff are limited to one per
> day. [Petitioner] has been previously warned of this violation on an email sent to
> him on 7/28/2021. [Petitioner's] emails have also been directed at Trust Fund in
> an insolent manner. [Petitioner] has made disrespectful and disparaging
> statements towards staff in these emails which he has also previously been warned
> about. [Petitioner's] emails are also borderline threatening with statements such as
> "You have to get on your J.O.B. and figure these things out before "disaster" hit,
> not after."

(Hudson Decl., Ex. C at 5.) Petitioner was provided the incident report and a statement of his

disciplinary hearing rights prior to any subsequent disciplinary proceedings. (*Id.* at 5-6, 15.)

The incident report was referred to the Unit Disciplinary Committee ("UDC") on August

12, 2021. After advising Petitioner of his rights, the UDC read aloud the body of the incident

report. (*Id.*) Based on the nature of the charges, the UDC took no action and referred the matter

to the Discipline Hearing Officer ("DHO") for further review. (*Id.* ¶ 7, Ex. C at 5-6.)

DHO R. James Hudson conducted an in-person disciplinary hearing on September 3,

2021. (Hudson Decl. ¶¶ 3, 6, Ex. C.) In a post-hearing report sent to Petitioner via institutional

mail on or about September 10, 2021, DHO Hudson provided the following summary of the

proceedings and his findings:

> The [DHO] . . . advised the inmate of their due process rights at the DHO hearing.
> You stated you understood your rights and had no documentary evidence to
> present to DHO. You did not request witnesses and you declined the services of a
> staff representative to assist you at the hearing or help you in preparing your
> defense. You have been afforded due process and have had ample time to prepare
> a defense prior to the discipline hearing. You stated you were ready to proceed.
>
> The DHO determined you committed the prohibited act 312 insolence towards a
> staff member. The DHO dropped the charge of use of the mail for abuses other
> than criminal activity, code 296.
>
> The DHO based this decision on the facts presented in the body of the written
> [incident] report[.]
> . . . .
>
> You denied the charge to the DHO and stated "I have no statement." You did not
> present, nor did the DHO find, any evidence to dispute the reporting officer's
> written account of the incident. The DHO finds that the greater weight of the
> evidence supports the finding that you committed the prohibited act. Actions
> which interfere with staff in the performance of their duties, whether written,
> gestured or verbalized, are often viewed as an attempt to discredit the employee's
> authority and hampers the staff member's ability to control his[] or her area of
> responsibility. By being insolent, you encourage others to engage in similar
> behaviors, which can undermine staff authority and good order. The DHO also
> relies upon the documents listed in the documentary evidence section [i.e., the
> offending emails and previous warnings] which support and corroborate the
> reporting officer's account of the incident.

(*Id.* at 2.) "[T]o impress upon . . . Petitioner that insolence towards a staff member will not be

tolerated," DHO Hudson sanctioned Petitioner with the disallowance of twelve days of good

conduct time, the loss of commissary privileges for forty-four days, and a one-year ban on

certain prison work assignments.[2] (Hudson Decl. ¶ 7, Ex. C at 3.) DHO Hudson advised

---

[2] DHO Hudson gave a more detailed statement of his reasons for the chosen sanctions in
the hearing report, as follows:

> The DHO disallowed good conduct time in accordance with your sentencing
> guidelines (PLRA). The DHO imposed disallowance the loss of commissary and
> job as punishment for committing the prohibited acts and to make you

Petitioner that he could appeal the decision through the BOP's Administrative Remedy Program within twenty calendar days. (*Id.*)

Eight months later, in May 2022, Petitioner filed an administrative remedy request challenging DHO Hudson's decision. (Hudson Decl. ¶ 10, Ex. D at 15.) The BOP rejected the appeal as untimely, noting that regional appeals must be received within twenty days of receipt of the DHO report. (Pet. (ECF No. 1), Ex. F.) The BOP also rejected the appeal because Petitioner failed to provide staff verification that Petitioner was not at fault for the untimeliness. (*Id.*) Petitioner did not appeal the rejection of his administrative remedy request, nor did he file a subsequent request with the necessary verification.

On April 17, 2023, Petitioner filed a Petition for Writ of Habeas Corpus in this Court, challenging the disciplinary determination on four grounds:

**GROUND ONE:**  The UDC proceedings conducted by counselor were not impartial as counselor Cray was significantly involved in the incident violating Title 28 C.F.R. Section 541.7(b).

**GROUND TWO:**  The incident report did not provide me . . . with enough information from which I could "marshal the facts in my defense."

**GROUND THREE:**  The DHO . . . imposed sanction against me in a retaliatory manner, courtesy of the trust fund supervisor, when he agreed with Mr. DeBoer that I should not be re-hired in education, as well as the sanctions were arbitrary and capricious and not allowed, all in violation of 28 C.F.R. Section 541.1.

---

accountable for your actions. The DHO enacted the suspended sanction of loss of phone privileges to serve as a deterrent for future misconduct.

The action/behavior of any inmate to become insolent toward any staff member threatens their ability to carry out his/her assigned duties and to effectively deal with all inmates in the area. Being insolent to a staff member is very disrespectful and shows a lack of discipline on your part to abide by the rules and regulations of the institution. By being insolent, you encourage others to engage in similar behaviors, which can undermine staff authority and good order.

**GROUND FOUR:** The DHO violated my "right to hear" as well as the charging document (the incident report) did not provide me with sufficient notice to Marshal the facts in my defense. The evidence (the e-mails) was insufficient to support a finding of guilt by the DHO. Lastly, the DHO should not have been an investigator or otherwise significantly injecting himself into the proceedings which violated 28 C.F.R. Section 541.8(b).

(Pet. at 3-11.) Petitioner asks this Court to "expunge" the incident report, restore the twelve days of disallowed good conduct time, and restore "any First Step Act credits that [DHO Hudson's] erroneous decision may have affected as to my release date calculation[.]" (*Id.* at 10.)

## DISCUSSION

Respondent urges this Court to deny habeas relief, arguing that Petitioner failed to exhaust his administrative remedies and otherwise suffered no denial of due process during the 2021 disciplinary proceedings. (Resp. to Pet. (ECF No. 11) at 2.) The Court considers both arguments in turn.

## I.    Exhaustion

### A.    Legal Standards

"In order to seek habeas relief under section 2241 . . . a petitioner must first, 'as a prudential matter,' exhaust his or her available administrative remedies." *Singh v. Napolitano*, 649 F.3d 899, 900 (9th Cir. 2011) (per curiam); *see also Brown v. Rison*, 895 F.2d 533, 535 (9th Cir. 1990) (explaining that exhaustion of administrative remedies is not a jurisdictional requirement in a Section 2241 action). Requiring a petitioner to exhaust his administrative remedies aids "judicial review by allowing the appropriate development of a factual record in an expert forum." *Ruviwat v. Smith*, 701 F.2d 844, 845 (9th Cir. 1983). Use of available administrative remedies also conserves "the court's time because of the possibility that the relief applied for may be granted at the administrative level." *Id.* Moreover, it allows "the administrative agency an opportunity to correct errors occurring in the course of administrative

proceedings." *Id.*; *United Farm Workers v. Ariz. Agric. Emp. Relations Bd.*, 669 F.2d 1249, 1253 (9th Cir. 1982).

"Exhaustion of administrative remedies is not required where the remedies are inadequate, inefficacious, or futile, where pursuit of them would irreparably injure the plaintiff, or where the administrative proceedings themselves are void." *United Farm Workers*, 669 F.2d at 1253 (simplified); *see also Fraley v. United States Bureau of Prisons*, 1 F.3d 924, 925 (9th Cir. 1993) (exhaustion waived where request for administrative remedy initially denied by Community Corrections Office based upon official Bureau of Prisons ("BOP") policy and further appeal would almost certainly have been denied based upon the same policy). Although "Courts have discretion to waive the exhaustion requirement when prudentially required, this discretion is not unfettered." *Laing v. Ashcroft*, 370 F.3d 994, 997-98 (9th Cir. 2004). A "key consideration" in the exercise of such discretion is whether "relaxation of the requirement would encourage the deliberate bypass of the administrative scheme." *Id.* at 1000 (simplified).

### B. Analysis

The BOP has in place a two-level administrative review procedure for complaints stemming from prison disciplinary proceedings. An individual in custody may appeal an adverse DHO decision directly to the Regional Director by submitting a BP-10 form within twenty calendar days of the DHO's decision. *See* 28 C.F.R. §§ 542.14(a), (d)(2); § 542.15(b). If dissatisfied with the Regional Director's response, the individual may then submit a BP-11 form to the BOP's Office of General Counsel "within [thirty] calendar days of the date the Regional Director signed the response." 28 C.F.R. § 542.15(a). An extension of the filing time may be granted if the individual can demonstrate a "valid" reason for delay, such as "an extended period of time during which the [individual] was physically incapable of preparing a Request or Appeal;

. . . [or] indication by [the individual], verified by staff, that a response to the [individual's] request for copies of dispositions . . . was delayed." 28 C.F.R. §§ 542.14(b), 542.15(a). Because the "[a]ppeal to the General Counsel is the final administrative appeal[,]" 28 C.F.R. § 542.15(a), an individual challenging prison disciplinary proceedings has not exhausted his administrative remedies until he has raised his claims and they have been denied at both levels described above.

Petitioner's disciplinary hearing took place before DHO Hudson on September 3, 2021. Petitioner did not appeal within twenty calendar days as required by 28 C.F.R. § 542.14(a), instead waiting until May 2022 to file an administrative remedy request with the BOP's Western Regional Office. The Regional Director denied the request as untimely. The Regional Director also denied the request based on Petitioner's failure to verify that he was not at fault for the delay. Petitioner did not seek further review.

Petitioner acknowledges that he failed to exhaust his administrative remedies but argues that such failure should be excused because Sheridan staff consistently have refused to provide the requisite verification to excuse the untimeliness of his appeal. (Reply to Gov't Counsel's Resp. to Pet. (ECF No. 16) at 1.) According to Petitioner, he never received a copy of the hearing report sent via institutional mail on September 10, 2021, because he contracted COVID-19 soon after the disciplinary hearing and was moved to the gymnasium to quarantine. (Pet. at 4.) Petitioner then was moved into a new housing unit. (*Id.*) When he still had not received a copy of DHO Hudson's report several months later, Petitioner submitted written requests for the report in January and February 2022.[3] (*Id.*, Ex. A.) Petitioner finally received a copy of the report on March 10, 2022. (Pet. at 4.)

---

[3] Petitioner asserts that "[i]t was common practice that before COVID inmates would complain that they would not get the DHO's report for 90 to 180 days after they had seen him and he adjudicated them guilty." (Pet. at 4.) Presumably, Petitioner did not formally request a

PAGE 7 – OPINION AND ORDER

Four days later, on March 14, 2022, Petitioner sent a request to his unit manager for a staff memorandum to verify that he was not at fault for his delayed appeal, explaining that he had only recently been provided DHO Hudson's report. (*Id.*, Ex. C.) Petitioner's unit manager did not respond. (Pet. at 4.) After "realiz[ing] the unit manager was not going to assist" him, Petitioner filed a BP-10 with BOP's Western Regional Office on May 1, 2022, without the requisite staff verification. (*Id.*, Ex. D.) Petitioner attached a detailed explanation for the delay and a copy of his unanswered request to the unit manager. (*Id.*) The Regional Director nevertheless rejected the appeal as untimely and lacking staff verification that the delay was not Petitioner's fault. (*Id.*) Petitioner's subsequent attempts to obtain the requisite staff verification to excuse his delay were unsuccessful. (*Id.*, Ex. E.)

Respondent does not dispute Petitioner's claims that he did not receive DHO Hudson's report until March 2022 or that he made several, albeit unsuccessful, attempts to obtain the requisite staff verification to excuse his untimeliness. Instead, Respondent argues that the Court should not excuse Petitioner's failure to exhaust because he failed to present the argument he raises here to the BOP in the first instance, and because the BOP administrative remedy process remains available if he can demonstrate a valid reason for the delay. (Resp. to Pet. at 7.)

Upon review, the Court finds that despite Respondent's assertion to the contrary, the record shows that Petitioner attached to his BP-10 a detailed statement explaining the circumstances underlying his delayed appeal, as well as a copy of his unanswered request for a staff memorandum to verify that the delay was not his fault. The Regional Director apparently ignored Petitioner's explanation and the evidence of Sheridan staff inaction, rejecting the appeal

---

copy of the report prior to January 2022 because such delay was common and he assumed the report would be forthcoming.

as untimely and lacking the requisite verification. Although Petitioner did not file a BP-11, he thereafter made several more attempts to obtain the necessary staff verification, which, for reasons that are unclear from the record, also were unsuccessful.

On these limited facts, the Court cannot determine whether further attempts to secure the requisite staff verification, or to administratively appeal DHO Hudson's decision without such verification, would have been, or would now be, successful. There is no evidence to clarify, for example, whether Petitioner's apparent inability to secure the requisite staff verification was due to something outside Petitioner's control—*i.e.*, negligence or inadvertence in the review process or inaction stemming from understaffing—or a staff determination that Petitioner was at fault for the delay. The Court therefore can rely only on the limited evidence provided by Petitioner, which suggests that Sheridan staff simply ignored or refused Petitioner's requests for a staff memorandum without justification and would continue to do so. Moreover, the BOP rejected Petitioner's BP-10 despite his explanation of the circumstances that caused the delay and his difficulty obtaining staff verification, and therefore it stands to reason, in the absence of any evidence to the contrary, that further appeals would have been rejected on the same grounds. Indeed, Respondent's assertion that the BOP remedy process still is available to Petitioner rings hollow when there is no evidence that the BOP would accept an untimely appeal without the requisite staff verification. Because the limited record before the Court suggests that administrative remedies are futile in this case, and because the Court is satisfied that Petitioner made significant efforts to properly appeal DHO Hudson's decision rather than attempting to bypass the administrative scheme, the Court declines to dismiss the petition based on Petitioner's failure to exhaust and now turns to the merits of his claims.

///

II.     **The Merits**

A.     **Legal Standards**

A federal court may grant a writ of habeas corpus to an individual who "is in custody in violation of the Constitution or law or treaties of the United States." 28 U.S.C. § 2241.

Prison disciplinary proceedings "are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). Where a prison disciplinary hearing may result in the loss of good time credits, due process requires that the individual in custody receive: (1) advance written notice of the disciplinary charges; (2) the ability to call witnesses and present documentary evidence in his defense if it "will not be unduly hazardous to institutional safety or correctional goals"; (3) a written statement by the factfinder of the evidence relied on and the reasons for disciplinary action; (4) assistance at the hearing if he is illiterate or the issues are complex; and (5) a sufficiently impartial decisionmaker. *Id.* at 563-71.

Due process also requires that "some evidence" support the disciplinary action taken. *Superintendent v. Hill*, 472 U.S. 445, 455 (1985). "Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence." *Id.* Rather, the Court must consider "whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Id.* (simplified).

B.     **Analysis**

The Court's review of the record confirms that Petitioner was provided the procedural safeguards outlined in *Wolff*. Specifically, the Court finds that Petitioner was provided with notice and an explanation of the charges against him on August 11, 2021, approximately three

weeks before the disciplinary hearing on September 3, 2021. (Hudson Decl., Ex. C at 1, 5-6.)
Petitioner waived his right to a representative to assist him during the hearing, declined to call
any witnesses, and declined to make a statement in his defense. (*Id.* at 1-2.) Petitioner received a
written statement explaining the reasons for the disciplinary action taken by DHO Hudson, who
is "an impartial hearing officer who does not investigate or have any prior knowledge" of an
alleged violation before it is referred for consideration. (Hudson Decl. ¶ 3, Ex. C at 1-2.) There is
also "some evidence" in the record to support DHO Hudson's decision, namely, the incident
report and copies of the offending emails authored by Petitioner.

Petitioner nevertheless argues that the disciplinary proceedings and resulting sanctions
violated his due process rights, raising four grounds for relief. The Court addresses each in turn.

### 1. Ground One

In Ground One, Petitioner asserts that the UDC proceedings were not impartial because
they were conducted by Counselor Cray, who allegedly "was significantly involved in the
incident" in violation of 28 C.F.R. § 541.7(b).[4] (Pet. at 3.) In support of this claim, Petitioner
attests that Counselor Cray called him into his office on July 28, 2021, to discuss a disrespectful
email Petitioner had sent to DeBoer. (Pet. at 6.) Petitioner explained the underlying disagreement
with DeBoer, and Counselor Cray tried to resolve the issue before ultimately urging Petitioner to
stop emailing DeBoer. (*Id.*) Based on this discussion, Petitioner argues that Counselor Cray was
a witness to, investigated, or was otherwise significantly involved in the incident underlying the
September 2021 disciplinary proceedings and therefore should not have been "within an inch of
being involved" in the disciplinary review process. (*Id.*)

---

[4] 28 C.F.R. § 541.7(b) instructs that the members of the UDC "will not be victims,
witnesses, investigators, or otherwise significantly involved in the incident."

The Court does not agree. The incident report at issue arose out of a series of emails that Petitioner sent to DeBoer on August 10, 2021, which is a separate and distinct incident from the email discussed in Counselor Cray's office on July 28, 2021. That Counselor Cray spoke with Petitioner about a previous incident involving similar conduct toward DeBoer does not render Counselor Cray "significantly involved" in, a witness to, or an investigator of the incident that ultimately resulted in Petitioner's disciplinary action. Indeed, Counselor Cray's involvement with the August 10 incident appears to have been limited to conducting the UDC proceeding two days later, on August 12.

More importantly, however, Counselor Cray did not conduct the disciplinary hearing or impose the sanctions challenged here. Rather, the UDC referred the incident report to DHO Hudson for review. *See* 28 C.F.R. § 541.7(a)(4) (instructing that "[i]f you are charged with a Greatest or High severity prohibited act, or are an inmate covered by § 541.4, the UDC will automatically refer the incident report to the DHO for further review"). Counselor Cray thus was not the "decisionmaker" in this case. Accordingly, Petitioner is not entitled to habeas relief as to Ground One.

### 2.    Ground Two

In Ground Two, Petitioner alleges that the incident report failed to provide enough information to allow him to marshal facts in his defense. (Pet. at 3.) Specifically, Petitioner alleges that he was not provided the offending emails or otherwise notified of "the specific statements Mr. DeBoer wrote me up for that indicated I had committed insolence towards him." (*Id.* at 7.)

Due process in the prison disciplinary context requires "advance written notice of the claimed violation and a written statement of the factfinders as to the evidence relied upon and the

reasons for the disciplinary action taken." *Wolff*, 418 U.S. at 563. "Part of the function of notice is to give the charged party a chance to marshal the facts in his defense and to clarify what the charges are, in fact." *Wolff*, 418 U.S. at 564. Although *Wolff* did not describe the requisite specificity of such notice, the Supreme Court "has stated that in identifying the safeguards due process requires in this context, courts should remember 'the legitimate institutional needs of assuring the safety of inmates and prisoners' and avoid 'burdensome administrative requirements that might be susceptible to manipulation.'" *Zimmerlee v. Keeney*, 831 F.2d 183, 188 (9th Cir. 1987) (quoting *Hill*, 472 U.S. at 445-55).

Here, Petitioner was provided Incident Report 3535109 approximately three weeks before the disciplinary hearing. (Hudson Decl., Ex. C at 5). The incident report clearly set forth the charges against Petitioner—disruptive conduct most like mail abuse and insolence towards staff—and explained that the charges were based on four emails Petitioner sent on August 10, 2021 at 6:41 p.m., 6:43 p.m., 6:48 p.m., and 6:49 p.m. (*Id.*) The incident report specified that the emails included "disrespectful and disparaging statements towards staff," and "borderline threatening" statements such as, "You have got to get on your J.O.B. and figure these things out before 'disaster' hit, not after." (*Id.*) The incident report further noted that Petitioner previously had received warnings for similar conduct. (*Id.*)

Petitioner nevertheless argues that notice was deficient because he was not given copies of the offending emails prior to the disciplinary hearing. Petitioner's argument is unpersuasive, however, because the incident report clearly identified the emails at issue by date and time, and Petitioner does not plausibly allege that he could not access his own email account to review the emails in the three weeks leading up to the hearing. Moreover, the incident report specifically explained that the emails included disrespectful and disparaging comments toward staff and set

PAGE 13 – OPINION AND ORDER

forth an example of one such "borderline threatening" comment. Finally, the incident report

noted that Petitioner was previously warned about the specific conduct at issue on July 28. 2021,

which Petitioner recalls in detail in the petition and his supporting brief. On these facts,

Petitioner cannot reasonably claim that the incident report provided so little information as to

prevent him from "marshal[ing] the facts in his defense." *See Zimmerlee*, 831 F.2d at 188

(finding notice sufficient that included facts and dates sufficient to prepare a defense). The Court

finds that Petitioner received constitutionally adequate notice of the charges against him, and he

is not entitled to habeas relief as to Ground Two.

### 3.    Ground Three

In Ground Three, Petitioner alleges that the DHO Hudson's imposition of a sanction

prohibiting Petitioner from holding certain prison work assignments[5] for one year was

retaliatory, arbitrary and capricious, and "not allowed" in violation of 28 C.F.R. § 541.1. (Pet. at

8.) Petitioner asserts that DHO Hudson acted in a retaliatory manner by working "in concert"

with DeBoer to prevent Petitioner from being hired in certain departments within the prison, and

that "the sanction only allows for 'LOSS OF JOB' NOT HIRING." (*Id.* at 9.)

As Respondent points out, however, this claim is not cognizable in habeas. *See Preiser v.*

*Rodriguez*, 411 U.S. 475, 484 (1973) (explaining that "the essence of habeas corpus is an attack

by a person in custody upon the legality of that custody"). Where, as here, a favorable judgment

"would not 'necessarily spell speedier release,' an individual in custody's claim does not lie at

'the core of habeas corpus,' and may be brought, if at all, [in a civil rights action]." *Skinner v.*

*Switzer*, 562 U.S. 521, 535 n.13 (2011) (quoting *Wilkinson v. Dotson*, 544 U.S. 74, 82 (2005));

---

[5] Specifically, Petitioner was prohibited from working in the education, CMS, recreation, or safety departments. (Pet. at 9.)

*see also Ramirez v. Galaza*, 334 F.3d 850, 859 (9th Cir. 2003) (explaining that "habeas jurisdiction is absent and a [civil rights] action proper, where a successful challenge to a prison condition will not necessarily shorten the [individual in custody]'s sentence"); *Akili v. Heisner*, No. CV-21-02200-PHX-DLR (MTM), 2022 WL 17489988, at *4 (D. Ariz. Aug. 29, 2022) (explaining that "challenges to disciplinary sanctions which do *not* affect the fact or duration of confinement are noncognizable in a [Section] 2241 petition"). Because Ground Three is not recognized as grounds for a habeas challenge, it must be dismissed.

### 4.    Ground Four

In Ground Four, Petitioner alleges that (1) DHO Hudson violated his "right to hear" the evidence against him by failing to describe which emails were insolent;[6] (2) the email evidence was insufficient to support a finding of guilt; and (3) DHO Hudson improperly investigated the incident when he spoke with DeBoer off the record about Petitioner's employment in the education department. (Pet. at 10-11.) The Court does not agree.

With respect to subclaim 1, due process requires only that Petitioner receive the procedural protections outlined in *Wolff*—notice, opportunity to present witnesses and evidence, assistance if the issues are complex, an impartial decisionmaker, and a written statement by the factfinder—and that "some evidence" support the decision. DHO Hudson provided a written hearing report that summarized the hearing, identified the incident report and "multiple emails to

---

[6] Although Ground Four includes language challenging the sufficiency of notice ("DHO violated my 'right to hear' as well as the charging document (incident report) did not provide me with sufficient notice to marshal the facts in my defense"), the supporting facts provided by Petitioner appear to challenge DHO Hudson's failure to "present . . . documentary evidence of what specific e-mails . . . constituted 'insolence'" during the disciplinary hearing. (*See* Pet. at 11.) To the extent Petitioner again seeks to challenge the adequacy of notice in Ground Four, the Court already has determined that the notice provided Petitioner was sufficient and declines to revisit that claim.

staff" as the evidence relied on to determine that Petitioner had committed the charged offense, and provided a detailed explanation of the reasons for the disciplinary actions taken. (Hudson Decl., Ex. C.) The incident report and several of Petitioner's emails were attached to the hearing report. (*Id.* at 5, 10-13.) This is more than enough to satisfy due process. *See Wolff*, 418 U.S. at 564 (explaining that "there must be a written statement by the factfinders as to the evidence relied on and reasons for the disciplinary action") (simplified). Petitioner provides no authority, and the Court is aware of none, to suggest that the factfinder must provide a particularized analysis of the documentary evidence submitted during a disciplinary hearing to satisfy an accused's "right to hear" the evidence against him.

With respect to subclaim 2, due process requires that "some evidence in the record" support DHO Hudson's findings. *Hill*, 472 U.S. at 454. The Court finds that the evidence presented at the disciplinary hearing and relied upon by DHO Hudson is more than adequate to support the disciplinary decision, particularly Petitioner's emails, which plainly show Petitioner addressing staff in an insolent and disrespectful manner.[7] Although Petitioner insists that none of his emails were insolent or disrespectful under the circumstances, the "some evidence" standard is "minimally stringent" and requires a reviewing court to refrain from "mak[ing] its own assessment of the credibility of witnesses or reweigh[ing] the evidence." *Cato v. Rushen*, 824 F.2d 703, 705 (9th Cir. 1987) (simplified); *see also Machado v. Lizarraga*, No. 2:19-cv-0097 TLN AC P, 2023 WL 3340448, at *2 (E.D. Cal. May 10, 2023) (explaining that "[t]he reliability,

---

[7] Petitioner's emails address staff recipients as "Mr. Smarty Pants," "Mr. Deuce Deuce Bigelow," and "the man with all the answers." (Hudson Decl., Ex. C at 11-13.) The emails also include comments such as "Man what rock are you living under????????????," "You cannot be for real," "Come on Man, Get with the program," and "get on your J.O.B. and figure these things out[.]" (*Id.*)

weight, and interpretation of the evidence [presented at a prison disciplinary hearing] is not judicially reviewable").

Finally, with respect to subclaim 3, due process requires an impartial decisionmaker at a prison disciplinary hearing. *Wolff*, 418 U.S. at 570-71. A decisionmaker is "not sufficiently impartial" when the record "presents such a hazard of arbitrary decisionmaking that it should be held violative of due process of law." *Id.* at 571. Although Petitioner asserts that DHO Hudson was not sufficiently impartial because he "spoke with Mr. DeBoer off the record" and "agreed with him that [Petitioner] should not be hired back in the education department[,]" (Pet. at 11), DHO Hudson attests that he did not have any improper communication with staff concerning his sanctions determination, and that such determination was "based solely on the evidence, [his] training and experience as a DHO, [his] impartial judgment, and applicable BOP policy." (Hudson Decl. ¶8.) Petitioner presents no evidence to the contrary, and DHO Hudson's "agreement" that Petitioner should not work in the education department, without more, is insufficient to establish bias. *See Petersen v. Bradley*, No. 2:20-cv-05971-RGK (MAA), 2022 WL 2910190, *7 (C.D. Cal. May 17, 2022) (explaining that "[a]dverse rulings, standing alone, are insufficient to satisfy a party's burden of showing that the decisionmaker was biased") (citing *Liteky v. United States*, 510 U.S. 540, 55 (1994)).

For all these reasons, Petitioner is not entitled to habeas relief as to Ground Four.

///

///

///

///

///

PAGE 17 – OPINION AND ORDER

**CONCLUSION**

Based on the foregoing, the Court DENIES the Petition for Writ of Habeas Corpus (ECF

No. 1) and DISMISSES this action, with prejudice.

**IT IS SO ORDERED.**

DATED this 10th day of October, 2023.

 /s/ Karin Immergut
Karin J. Immergut
United States District Judge
